**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JUDITH CUNNINGHAM**, *et al.*, | : | **CIVIL ACTION NO. 1:12-cv-1238** |
| | : | |
| **Plaintiffs,** | : | **(Chief Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **M&T BANK CORP.**, *et al.*, | : | |
| | : | |
| **Defendants.** | : | |

<u>**MEMORANDUM**</u>

Presently before the court in the above-captioned matter are two motions to dismiss plaintiffs' first amended complaint (Doc. 56) filed by M&T Bank Corp., M&T Bank, and M&T Mortgage Reinsurance Co. (Doc. 66) and Genworth Mortgage Insurance Corp. ("Genworth"), Mortgage Guaranty Insurance Corp. ("MGIC"), and Radian Guaranty, Inc., ("Radian") (Doc. 69). The parties have briefed the issues and the motions are ripe for disposition. For the reasons that follow, the court will grant in part and deny in part both motions.

**I.     <u>Factual and Procedural History</u>**

This is a putative class action involving captive reinsurance in the residential mortgage insurance industry. Plaintiffs are individual borrowers who entered into residential mortgage loan transactions with M&T Bank Corporation through its subsidiary, M&T Bank (collectively, "M&T"). (Doc. 56 at ¶¶ 21-25). The plaintiffs' various mortgage loans were executed between October 19, 2004, and December 29, 2008. (<u>Id.</u>). As a condition of their mortgage, each plaintiff was required to obtain private mortgage insurance. (<u>Id.</u>). Consistent with custom in the residential

mortgage industry, the private mortgage insurer was selected by the lender. (Id. at ¶ 48). While the lender is the beneficiary of the mortgage insurance agreements, the borrower pays the insurance premium, either through inclusion of premiums in his or her monthly mortgage payment or indirectly through higher interest rates on the loan. (Id. at ¶ 47). Each plaintiff obtained mortgage insurance through M&T and paid monthly premiums ranging from $26.01 to $156.79. (Id. at ¶¶ 21-25).

Plaintiffs claim that M&T and its affiliate, M&T Mortgage Reinsurance Co. ("M&T RE") acted with private mortgage insurers Genworth, MGIC, and Radian (collectively, the "primary insurers") to carry out a captive reinsurance scheme in violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq.* (Id. at ¶¶ 187-200), which prohibits referral fees, kickbacks, and unearned fee-splitting in any business incident to real estate settlement services. According to the amended complaint, M&T referred plaintiffs' mortgage transactions to the primary insurers. (Id.). The primary insurers issued private mortgage insurance policies with respect to each plaintiff's mortgage, (id. at ¶¶ 21-25), and, in exchange for M&T's referral of business, reinsured the policies with M&T's captive reinsurer, M&T RE. (Id. at ¶¶ 69-71). Hence, these contracts were "shams" because they did not create a bona fide reinsurance relationship between the primary insurers and M&T RE; according to plaintiffs, no risk was ever transferred between the primary insurer and M&T RE, and the sole purpose of the agreements was to allow the primary insurers to kick insurance proceeds back to M&T RE in exchange for the mortgage insurance referral. (Id. at ¶¶ 187-200).

Plaintiffs commenced this action with the filing of a three-count complaint (Doc. 1) on June 28, 2012. On October 9, 2012, with the consent of all defendants, the plaintiffs filed the now-operative first amended complaint (Doc. 56) which, *inter alia*, added two plaintiffs to the lawsuit.[1] Therein, plaintiffs assert claims for violation of RESPA (Count I), for unjust enrichment (Count II), and for violation of New York General Business Law § 349(a) (Count III). On December 10, 2012, the M&T defendants and the primary insurers each filed motions (Doc. 66, 69) to dismiss the first amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The defendants primarily contend that the statute of limitations on each plaintiff's claims has expired and cannot be equitably tolled, subjecting the claims to dismissal under Rule 12(b). After the motions were fully briefed, the parties filed several notifications of supplemental authority (Doc. 84-90, 92, 94-95, 98-99, 102-03, 106-07, 111-12, 115, 118, 121), and the court scheduled oral argument for August 15, 2013. At the request of counsel, the scheduled argument was adjourned for sixty days. (Doc. 123). On October 17, 2013, the court held oral argument and, at the conclusion thereof, took the motions under advisement.

---

[1] The first amended complaint also names United Guaranty Residential Insurance Co. ("United Guaranty") as a defendant. (Doc. 56 at ¶¶ 1, 30). Plaintiffs filed a notice of voluntary dismissal (Doc. 81) on March 13, 2013, dismissing without prejudice all claims against United Guaranty under Federal Rule of Civil Procedure 41(a)(1)(A)(i). Unless otherwise noted, collective references to "defendants" herein exclude former defendant United Guaranty.

## II.  **Standard of Review**

Federal notice and pleading rules require the complaint to provide "the defendant notice of what the . . . claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To test the sufficiency of the complaint in the face of a Rule 12(b)(6) motion, the court must conduct a three-step inquiry. See Santiago v. Warminster Twp., 629 F.3d 121, 130-31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)). Next, the factual and legal elements of a claim should be separated; well-pleaded facts must be accepted as true, while legal conclusions may be disregarded. Id.; see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210–11 (3d Cir. 2009). Once the well-pleaded factual allegations have been isolated, the court must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. When the complaint fails to present a prima facie case of liability, however, courts should generally grant leave to amend before dismissing a complaint. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116–17 (3d Cir. 2000).

## III. Discussion

Although the pending motions focus primarily on statute of limitations and equitable tolling issues, the defendants also lodge various challenges with regard to the merits of the plaintiffs' three claims. The court will first address the equitable tolling dispute before turning to the parties' ancillary arguments with respect to the merits of the RESPA, unjust enrichment, and Section 349 claims.

### A. Applicability of Equitable Tolling

The plain language of RESPA requires that claims involving unlawful kickbacks and unearned referral fees be brought within one year of "the date of the occurrence of the violation." 12 U.S.C. § 2614. Plaintiffs acknowledge the one year statute of limitations and concede that the most recent of the plaintiffs' mortgage loans was executed more than three years and five months before this action was commenced. (Doc. 78 at 22). Plaintiffs posit, however, that the defendants collectively and fraudulently concealed the impropriety of their reinsurance arrangements and prevented the plaintiffs from discovering the RESPA violation within one year of the violation, equitably tolling the statute of limitations. (Id.). Defendants contend that plaintiffs have satisfied neither the heightened pleading standard for fraudulent conduct stated in Federal Rule of Civil Procedure 9(b), which all parties agree is applicable here, nor the standard governing equitable tolling. (Doc. 70 at 9; Doc. 74 at 2-3).

M&T asserts as a threshold matter that the Third Circuit Court of Appeals has never explicitly adopted equitable tolling in the context of a RESPA claim and that, for this reason alone, the court should reject plaintiffs' equitable tolling claim. (Doc. 74 at 10). Although the Circuit has never directly endorsed equitable tolling in a RESPA case, an overwhelming majority of authority supports its application. See Riddle v. Bank of Am., 2013 U.S. Dist. LEXIS 52091, *15-18 (E.D. Pa. Apr. 11, 2013); Barlee v. First Horizon Corp. (Barlee I), 2013 U.S. Dist. LEXIS 26636, *4 (E.D. Pa. Feb. 27, 2013); Garczynski v. Countrywide Home Loans, Inc., 656 F. Supp. 2d 505, 516 (E.D. Pa. Aug. 12, 2009); Marple v. Countrywide Financial Corp., 2008 U.S. Dist. LEXIS 37705, *8 (D.N.J. May 7, 2008); see also White v. PNC Fin. Servs. Group, 2013 U.S. Dist. LEXIS 86650, *8 n.4 (E.D. Pa. June 20, 2013) (collecting cases). Outside of this Circuit, district and appellate courts across the country have routinely reached the same conclusion. See, e.g., Lawyers Title Ins. Corp. v. Dearborn Title Corp., 118 F.3d 1157, 1166-67 (7th Cir. 1997); Minter v. Wells Fargo Bank, N.A., 675 F. Supp. 2d 591, 595 (D. Md. Dec. 16, 2009); Boudin v. Residential Essentials, LLC, 2007 U.S. Dist. LEXIS 50331, *13-16 (S.D. Ala. July 10, 2007); Carr v. Home Tech Co., 476 F. Supp. 2d 859, 869 (W.D. Tenn. Mar. 6, 2007); Pedraza v. United Guar. Corp., 114 F. Supp. 1347, 1352-53 (S.D. Ga. Apr. 25, 2000). Not only does a substantial body of decisional law support tolling for RESPA plaintiffs, this determination is consistent with the established principle that equitable tolling shall be read into all federal statutes of limitation absent express congressional intent to the contrary. Ramadan v. Chase Manhattan Corp., 156 F.3d 499, 504 (3d Cir. 1998). Therefore, the court will

6

join the long line of federal district and appellate courts that have previously concluded that equitable tolling applies to RESPA claims.

Turning to the substance of the tolling debate, the parties substantially agree as to the applicable equitable tolling standard but dispute the proper application of that standard to the plaintiffs' first amended complaint. As a general rule, equitable tolling is appropriate if: (1) the defendant has actively misled the plaintiff regarding her claim; (2) the plaintiff has in "some extraordinary way" been prevented from pursuing her rights; or (3) the plaintiff has timely asserted her rights in the wrong forum. Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1387 (3d Cir. 1994); Hedges v. United States, 404 F.3d 744, 751 (3d Cir. 2005). Plaintiffs proceed on only the first ground, contending that the defendants fraudulently concealed the nature of their reinsurance relationships and actively misled plaintiffs in such a way that plaintiffs "could not, despite the exercise of due diligence, have discovered the underlying basis for their claims." (Doc. 56 at ¶ 153).

To benefit from equitable tolling on a fraudulent concealment theory,

> plaintiffs have the burden of proving three necessary elements: (1) that the defendant actively misled the plaintiff; (2) which prevented the plaintiff from recognizing the validity of her claim within the limitations period; and (3) where the plaintiff's ignorance is not attributable to her lack of reasonable due diligence in attempting to uncover the relevant facts.

Cetel v. Kerwan Fin. Group, Inc., 460 F.3d 494, 509 (3d Cir. 2006). In RESPA cases, mere non-disclosure is not a misleading act for purposes of tolling the statute of limitations; rather, the plaintiff must plead an "independent act of concealment"

upon which he or she justifiably relied. <u>Riddle</u>, 2013 U.S. Dist. LEXIS at *19 (citing

<u>Garczynski</u>, 656 F. Supp. 2d at 516). Because questions of tolling inherently involve

reasonableness inquiries, "tolling is not generally amenable to resolution on a Rule

12(b)(6) motion." <u>Drennan v. PNC Bank, N.A.</u>, 622 F.3d 275, 301-02 (3d Cir. 2010).

In support of the first element, plaintiffs contend that the mortgage form

documents and the mortgage insurance disclosures are intentionally misleading.

Plaintiffs assert that, despite being aware that no risk would be assumed by M&T

RE through the reinsurance agreements, M&T's form documents and disclosures

nonetheless assured plaintiffs that M&T RE would receive payments or premiums

in exchange for actual services performed or risk assumed. According to plaintiffs,

defendants went beyond the alleged RESPA violation, using misrepresentative

mortgage documents to cloak their unlawful relationship with an appearance of

propriety. Plaintiffs contend that these misrepresentations "lulled" them into the

false assumption that the reinsurance arrangements were fair and lawful,

preventing them from realizing their claims within the limitations period. As to the

third element, plaintiffs apparently concede that they took no action beyond

participating in the loan transactions until they retained current counsel and

learned of the RESPA violation.

M&T and the primary insurers each argue that the facts alleged fail to satisfy

any of the Cetel elements. Defendants emphasize that plaintiffs failed to exercise

any diligence in the years after their loans were executed. They also assert that

because the mortgage form documents are "part and parcel" of the underlying

8

RESPA violation, plaintiffs have failed to state an active misrepresentation that is independent of the substantive wrong to satisfy the first Cetel element. Finally, in addition to mirroring the arguments raised by M&T, the primary insurers assert that there are no particular facts tying any misleading conduct to them and that the plaintiffs have thus failed to satisfy Rule 9(b)'s heightened pleading requirement.

The law in this area is rapidly developing. District courts in this Circuit and in the Ninth Circuit have addressed substantially similar sets of facts and reached divergent conclusions as to the requirements of equitable tolling in RESPA cases. The Ninth Circuit cases largely line up with defendants' arguments *sub judice*, and the case law within the Third Circuit tends to favor plaintiffs' position. A review of both lines of cases informs and guides our analysis.

In a quick succession of cases, the district court for the Eastern District of Pennsylvania sided with borrowers, concluding that form mortgage documents, containing misleading language as to the nature of the captive reinsurance agreements, may constitute independent misleading acts for purposes of the first Cetel element. In <u>Barlee I</u>, the court held that the plaintiff borrowers had stated sufficient facts to survive a motion to dismiss where they averred that the bank "used its mortgage documents affirmatively to mislead" the borrowers as to the relationship between the bank, the primary insurers, and the bank's affiliated reinsurer. Barlee I, 2013 U.S. Dist. LEXIS 26636 at *16. Barlee I explicitly rejected the lender's argument that non-disclosure of a RESPA violation is part and parcel of the violation itself, emphasizing that the misrepresentation for tolling purposes is

9

not the behind-the-scenes fee-splitting arrangement but rather the separate and misleading mortgage documents.  Id. at \*16-17.  Similarly, in Riddle, the court held that where a lender's mortgage documents "misleadingly give the outward, though incorrect appearance of legitimacy," those documents satisfy the first Cetel prong. Riddle, 2013 U.S. Dist. LEXIS 52091 at \*24-28 (allegations that "[d]efendants dressed up an illegal scheme to appear as a legitimate transaction [are] sufficient" to satisfy the active misleading requirement.  Id. at \*28.  As to diligence, both courts adopted Marple, 2008 U.S. Dist. LEXIS 37705 at \*14-16, concluding that a plaintiff's allegation that he "actively participated in the settlement process and reviewed the relevant documents" is sufficient to satisfy the due diligence factor.  Barlee, 2013 U.S. Dist. LEXIS at \*15-17 (discussing Marple); Riddle, 2013 U.S. Dist. LEXIS at \*28 (same).

The District Court for the Western District of Pennsylvania followed suit in Ba v. HSBC USA, Inc., 2013 U.S. Dist. LEXIS 90329 (W.D. Pa. June 27, 2013).  In Ba, plaintiffs alleged that the lender "used form mortgage documents, disclosures, and affiliated business arrangements actively to mislead them" and that the defendants' actions "made it virtually impossible to uncover the true nature of the reinsurance arrangements."  Id. at \*4-5.  Relying on Barlee I and Riddle, the court concluded that dismissal at the Rule 12(b)(6) stage, without a fully developed record, was inappropriate.  Id.  Each court emphasized that it did not hold that the statute of limitations was in fact tolled, only that the complaints had pled sufficient facts to

plausibly support equitable tolling if the factual allegations were proved.² Barlee I,

2013 U.S. Dist. LEXIS at *14-17; Riddle, 2013 U.S. Dist. LEXIS at *28; Ba, 2013 U.S.

Dist. LEXIS 90329 at *5.

California federal courts, in contrast, have taken the exact opposite position

to that advanced by the plaintiffs here and adopted by the Barlee I, Riddle, and Ba

courts. In McCarn v. HSBC USA, Inc., 2012 U.S. Dist. LEXIS 162257 (E.D. Ca. Nov.

13, 2012), the court flatly rejected the borrower's position that the complex nature of

the RESPA violation rendered it indiscoverable without the assistance of a lawyer,

holding that the absence of any diligence within the limitations period precluded

equitable tolling. Id. at *20-21. The McCarn court further held that the plaintiff

had failed to state an independent act for tolling purposes, opining that the

misleading mortgage documents were an integral part of the RESPA violation itself

and thus did not constitute "active wrongdoing. . .to prevent the plaintiff from suing

in time." Id. at *23-25. Later, in both Orange v. Wachovia Bank, N.A., No. EDCV

12-01683 (E.D. Ca. May 6, 2013) and Samp v. JPMorgan Chase Bank, N.A., 2013 U.S.

Dist. LEXIS 67958 (C.D. Ca. May 7, 2013), California's Eastern and Central District

courts reiterated the McCarn holding, rejecting claims that the RESPA violation

---

² The Riddle court charted a slightly different procedural course than the Ba
and Barlee courts, noting that the defendants raised legitimate concerns as to the
timeliness of the plaintiffs' claims. Riddle, 2013 U.S. Dist. LEXIS at *29. For that
reason, rather than proceeding to merits discovery, the Riddle court afforded the
parties an opportunity to conduct limited discovery on the equitable tolling issue
alone. Id. (acknowledging defendants' concerns and allowing limited discovery on
the statute of limitations "before the parties pour significant time and resources
into the merits of [the plaintiffs'] claims").

was not reasonably discoverable and concluding that the plaintiff's had failed to allege any misrepresentations independent of the underlying basis for their lawsuit. Orange, No. EDCV 12-01683 at 8-10; Samp, 2013 U.S. Dist. LEXIS 67958 at *20-25.

This court is mindful of the Third Circuit's admonition that equitable tolling inquiries are generally fact-intensive. See Drennan, 622 F.3d at 301-02 (observing that "whether a particular party is eligible for equitable tolling generally requires consideration of evidence beyond the pleadings."). For this reason, the court joins the Barlee, Riddle, and Ba opinions, in particular the Riddle decision, and the court concludes that plaintiffs have stated a plausible case for equitable tolling of the RESPA statute of limitations. Hence, the court will deny the defendants' motions to dismiss. Plaintiffs have pled facts from which a jury could find that the mortgage documents misled them and improperly cloaked the fraudulent reinsurance relationship with an appearance of propriety, "lulling" the plaintiffs into a false sense of legality. (Doc. 56 at 179-82, 153-54). Plaintiffs also aver that M&T created the documents, and that the primary insurers were behind-the-scenes participants in the scheme who "knowingly and actively" worked with M&T to conceal the scheme, satisfying Rule 9(b)'s pleading requirements.[3] In addition, plaintiffs have

---

[3] With reliance on the California cases, the primary insurers in particular assert that plaintiffs have failed to satisfy Rule 9(b)'s pleading requirements because they have not stated with particularity any allegations against the primary insurers individually, instead grouping the insurers and M&T into the collective category of "Defendants" throughout their pleading. In the court's view, such allegations satisfy Rule 9(b). Taken as true, plaintiffs' amended complaint establishes that reinsurance relationships existed between M&T and the primary insurers and that *all* defendants actively worked to conceal the basis for the plaintiffs' claims and that

pled that they fully participated in all aspects of the mortgage loan transaction and

reviewed all relevant documents but that they were nonetheless unable to discover

the RESPA violation. (Id. at ¶ 185). As the Barlee, Riddle, and Ba courts held, in

this Circuit, nothing more is required of RESPA plaintiffs at the pleadings stage.[4]

However, like the Riddle court, this court hesitates to allow this matter to

proceed to full merits discovery, consuming both the parties' and the court's time

and resources, given the defendants articulated and legitimate concerns as to the

timeliness of plaintiffs' claims. For this reason, the court concludes that the most

appropriate course is the one charted in Riddle, and will thus allow the parties to

---

the defendants all agreed to participate in and perpetuate the deception. (Doc. 56 at
¶ 15, 153). On reconsideration, the <u>Barlee II</u> court rejected similar arguments raised
by the lender, observing that the full extent of the tripartite relationship between
the lender, insurers, and reinsurer could not be known without discovery, but that
allegations of conscious agreement and collective concealment sufficed to state a
plausible tolling argument for Rule 12(b)(6) purposes. <u>Barlee v. First Horizon Nat'l
Corp.</u> (<u>Barlee II</u>), 2013 U.S. Dist. LEXIS 49434, *7-8 (E.D. Pa. Apr. 5, 2013). This
court agrees with <u>Barlee II</u>. Whether an actual agreement or involvement can be
proved is a question to be decided on a fully developed record. For now, plaintiffs
have alleged conscious and collective concealment with sufficient particularity to
satisfy Rule 9(b). The court thus rejects the defendants' Rule 9(b) arguments.

[4] The court notes editorially that we disagree with defendants' position,
explored at oral argument, that plaintiffs should have done more in the interim
between the signing of their loans and the commencement of this litigation in order
to discover their claims. Assuming the facts of the amended complaint as true as we
must, the defendants' misleading documents and deceptive disclosures, coupled
with the complex nature of the defendants' reinsurance relationships, prevented
even experienced insurance regulators—purported experts in the insurance and
reinsurance fields—from discovering the nature of the RESPA violations until very
recently. (<u>E.g.</u> Doc. 56 at ¶¶ 179-80). At this juncture, the court is compelled to
reject the defendants' position that a reasonable plaintiff would or should have
done more under the circumstances.

proceed to limited discovery as to the statute of limitations and equitable tolling

issues alone.

## B. Merits of Plaintiffs' RESPA Claim

The court turns next to the parties' merits-based arguments, addressing the

RESPA claim first. The relevant sections of RESPA provide as follows:

> (a) Business referrals. No person shall give and no
> person shall accept any fee, kickback, or thing of
> value pursuant to any agreement or understanding,
> oral or otherwise, that business incident to or a
> part of a real estate settlement service involving a
> federally related mortgage loan shall be referred to
> any person.
>
> (b) Splitting charges. No person shall give and no
> person shall accept any portion, split, or percentage
> of any charge made or received for the rendering of
> a real estate settlement service in connection with a
> transaction involving a federally related mortgage
> loan other than for services actually performed.

12 U.S.C. § 2607(a)-(b). Section 2607(c) also includes a "safe harbor" provision,

providing that nothing in Section 2607 "shall be construed as prohibiting . . . the

payment to any person of a bona fide salary or compensation or other payment . . .

for services actually performed. Id. § 2607(c). As alluded to *supra*, the crux of the

plaintiffs' RESPA claim is that M&T RE assumed no real risk in connection with

the reinsurance premiums ceded to it by the primary insurers, thus rendering the

premiums unearned "kickbacks" in violation of § 2607(a) and (b).

As support for their position that the reinsurance agreements created a real

transfer of risk, defendants emphasize plaintiffs' allegation that M&T RE paid out

14

$5.2 million in claims on their respective policies. (Doc. 74 at 26). Thus, defendants

contend that plaintiffs' RESPA claims are belied by the face of their own pleading.

(Id.). However, defendants ignore the plaintiffs' allegation that the $5.2 million in

claims paid out was drawn from trust funds consisting solely of the premiums ceded

by the primary insurers, never from M&T RE's own capital, and that M&T had the

right to walk away from the arrangement without recourse to the primary insurers

at any time. (Doc. 56 at ¶ 114-117, 122-23). Plaintiffs have sufficiently alleged facts

which, if proved, may establish that the defendants' reinsurance relationships were

"shams" violative of RESPA. The determination of whether or not any real risk

was assumed is a fact-based inquiry which, like the ultimate equitable tolling

determination, must await further litigation.

### C.     Unjust Enrichment[5]

Defendants next argue that plaintiffs' common law unjust enrichment claims

are coextensive with their RESPA claims and for that reason must be dismissed. It

is true, as defendants allege, that unjust enrichment is a quasi-contractual doctrine

and is inapplicable if the parties' relationship "is founded on a written agreement or

---

[5] As with the RESPA claim, defendants contend that plaintiffs' unjust enrichment and § 349 claims are barred by the applicable statutes of limitation. Because the court has concluded *supra* that the plaintiffs have sufficiently pled equitable tolling for purposes of a Rule 12(b)(6) motion as to plaintiffs' RESPA claim, and because the same conduct underlying that claim forms the basis of plaintiffs' unjust enrichment and § 349 claim, the court will reject the defendants' statute of limitation arguments as to Counts II and III as well. As above, however, nothing in the court's decision shall preclude the defendants from again raising the statute of limitations issue at the appropriate juncture.

express contract." Hershey Foods Corp. v. Ralph Chapek, Inc., 828 F.2d 989, 999 (3d Cir. 1987) (quoting Schott v. Westinghouse Elec. Corp., 259 A.2d 443, 448 (Pa. 1969)). At this juncture, however, there are no facts from which the court could conclude that the unjust enrichment claim is "on the same subject" as the contract itself, see Barlee I, 2013 U.S. Dist. LEXIS 26636 at *18 (quoting In re Penn Cent. Transp. Co., 831 F.2d 1221, 1230 (3d Cir. 1987)), and thus a dismissal of plaintiffs' claim on this basis would be profoundly premature.

As to the merits of the claim, an unjust enrichment plaintiff must plead that he or she conferred a benefit on the defendant, that the defendant appreciated that benefit, and that retention of the unearned benefit under the circumstances would be inequitable. Id. (quoting Wiernik v. PHH U.S. Mort. Corp., 736 A.2d 616, 622 (Pa. Super. Ct. 1999)). Defendants contend that there are no facts in the complaint that tend to establish any of these elements. The court disagrees. Plaintiffs have alleged that they paid monthly mortgage insurance payments to the primary insurers, and that an undisclosed portion of that amount was ceded to M&T RE in connection with the defendants' sham reinsurance arrangements. (Doc. 56 at ¶¶ 1, 4, 21-25, 61, 103, 113-17). Plaintiffs further contend that no risk was ever assumed by M&T RE, and that M&T RE thus retained a benefit without earning it. (Id. at ¶¶ 4, 113-17). If plaintiffs are able to prove these facts at trial, a jury could find that the defendants were unjustly enriched by their reinsurance scheme. Accordingly, the court will deny the defendants' motion as to the unjust enrichment claims as well.

### D.  New York Law Claim

Finally, in Count III of their amended complaint, plaintiffs contend that the defendants have collectively engaged in deceptive consumer practices in violation of New York General Business Law § 349 ("Section 349). Section 349(a) declares unlawful any "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state. . . ." N.Y. GEN. BUS. LAW § 349. To prevail on a Section 349 claim, plaintiffs must plead the following three elements: "(1) the defendant's challenged acts or practices must have been directed at consumers; (2) the acts or practices must have been misleading in a material way; and (3) the plaintiff must have sustained an injury as a result." Cohen v. JPMorgan Chase & Co., 498 F.3d 111, 126 (2d Cir. 2007) (citing Maruzio v. Goldsmith, 230 F.3d 518, 521 (2d Cir. 2000)).

The defendants first assert that claims by four of the five named plaintiffs must be dismissed because Section 349 applies only to deceptive practices taking place in New York state. Only plaintiff Amanda Bishi has alleged that her mortgage transaction occurred in New York.[6] (Doc. 56 at ¶ 25). It is paramount to a Section 349 claim that "the deception of a consumer *must occur in New York.*" Kaufman v. Sirius XM Radio, Inc., 751 F. Supp. 2d 681, 687 (S.D.N.Y. Nov. 10, 2010) (emphasis added) ("New York law is clear that the fact that defendant's principal place of business is in New York is not sufficient to render [Section 349] applicable. The

---

[6] The remaining plaintiffs' respective transactions took place in Pennsylvania and Illinois. (Id. at ¶¶ 21-24).

reach of [Section 349] is explicitly limited to the deception of consumers occurring in New York.")). An allegation that a deceptive scheme originated in New York is insufficient. <u>Goshen v. Mut. Life Ins. Co.</u>, 774 N.E. 2d 1190, 1195 (N.Y. Ct. App. 2002) (rejecting claim that scheme originating in New York that resulted in a deceptive transaction in Florida is subject to Section 349). The deceptive transaction alleged here is the provision of misleading mortgage loan documents during closing, and thus the mortgage loan transactions must have occurred in New York in order to subject them to Section 349's reach. <u>See id.</u> Only plaintiff Bishi satisfies this prerequisite, and the court is therefore compelled to dismiss the Section 349 claims brought by the remaining out-of-state plaintiffs.

Turning to the merits of the Section 349 claim, the primary insurers contend that because the bulk of the allegations in Count III relate to the conduct of M&T, the complaint fails to state a Section 349 claim as to the insurers. Viewing the complaint *in toto*, however, it is clear that the plaintiff has alleged not only that M&T created and utilized materially deceptive mortgage disclosures and forms which concealed the unlawful nature of their reinsurance relationships, but also that the primary insurers, collectively with the M&T defendants, worked to achieve that concealment. (Doc. 56 at ¶¶ 15, 53, 179-82, 153-54). But further, plaintiff lodges allegations specific to the primary insurers, contending that in addition to colluding with M&T to conceal their unlawful reinsurance relationship, (id.), the insurers actively "disguis[ed] payments in the form of ceded insurance premiums . . . in order to procure more insurance business" and "actively and knowingly" concealed

18

their scheme. (Id. at ¶ 212(i)). Accordingly, the court rejects the primary insurers'

argument that plaintiff's allegations toward them are insufficient to state a Section

349 claim.

The primary insurers also posit that because their business does not involve

consumers, their conduct does not fall within the ambit of Section 349. It is true

that the complaint reveals no direct relationship or contacts between the primary

insurers and the plaintiff. However, defendants' argument that this lack of privity

precludes a Section 349 claim has been repeatedly rejected by New York courts.

See Goldych v. Eli Lilly, 2006 U.S. Dist. LEXIS 49616, *25 (N.D.N.Y July 19, 2006)

("[T]here is no requirement of privity, and victims of indirect injuries are permitted

to sue under the act. 'Consumer oriented conduct' refers to conduct that has a

broad impact on consumers at large."); Bildstein v. MasterCard Int'l, Inc., 2005 U.S.

Dist. LEXIS 10763, *9 (S.D.N.Y. June 7, 2005) ("Privity is not required to state a

Section 349 claim."); see also Szymczak v. Nissan N. America, 2011 U.S. Dist.

LEXIS 153011, *42 (S.D.N.Y. Dec. 16, 2011) ("[P]rivity between a buyer and seller is

not required for a Section 349 claim."); Phifer v. Home Savers Consulting Corp.,

2007 U.S. Dist. LEXIS 6290, *18-19 (E.D. Pa. Jan. 30, 2007) (holding that a Section

349 plaintiff can recover for a "materially deceptive act [that] caused her injury . . .

even if that injury was 'indirect'"). According to the complaint, although it was

M&T which ultimately made contact and directly transacted with the plaintiff, the

primary insurers indirectly participated in designing that transaction so as to

conceal the unlawful nature of their reinsurance relationships. Doc. 56 at ¶¶ 15, 53,

179-82, 153-54.  Thus, defendants' argument that their connection to the plaintiff is too attenuated to support a Section 349 claim is unavailing.

Finally, the defendants assert that the complaint fails to satisfy the damages element of Section 349, submitting that "the claimed deception cannot itself be the only injury." (Doc. 74 at 32 (quoting <u>Bildstein</u>, 319 F. Supp. 2d at 415)).  Defendants' position is plainly refuted by the amended complaint, in which the plaintiff alleges that as a result of the defendants' unlawful reinsurance scheme and the attendant "dilutive impact" that scheme had on competition in the insurance industry, plaintiffs were, over time, subjected to increased insurance premiums.  (Doc. 56 at ¶¶ 210-11, 215).  If true, this allegation suffices to satisfy the damages element of Section 349.

## IV.    Conclusion

The court emphasizes that today's ruling is a decision on neither the merits nor the timeliness of this lawsuit.  Our holding is simply that the plaintiffs have pled sufficient facts which, if true, might support equitable tolling of their respective statutes of limitation.  This is all that is required to survive a Rule 12(b)(6) motion to dismiss, and the final disposition of the statute of limitations question must await another day.  As indicated *supra*, the court will grant the defendants' motions to the limited extent they seek dismissal of the Section 349 claims against non-New York plaintiffs and deny the motions in all other respects.  Following the course charted by the <u>Riddle</u> court, this court will permit the parties to conduct limited discovery

and develop a record on the statute of limitations and equitable tolling issues.  An

appropriate order follows.


                                         /S/ CHRISTOPHER C. CONNER
                                        Christopher C. Conner, Chief Judge
                                        United States District Court
                                        Middle District of Pennsylvania


Dated:        October 30, 2013