# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JUDITH CUNNINGHAM**, *et al.*, | : | CIVIL ACTION NO. 1:12-cv-1238 |
| Plaintiffs, | : | (Chief Judge Conner) |
| v. | : | |
| **M&T BANK CORP.**, *et al.*, | : | |
| Defendants. | : | |

## MEMORANDUM

Presently before the court in the above-captioned matter is a motion (Doc. 144) filed by defendants M&T Bank Corporation, M&T Bank, and M&T Mortgage Reinsurance Company (collectively "M&T") seeking a stay of discovery and all further proceedings in this action pending resolution of a related case, Riddle v. Bank of America Corp., 2013 U.S. Dist. LEXIS 163526 (E.D. Pa. Nov 18, 2013), by the Third Circuit Court of Appeals. The motion is opposed by the plaintiffs and also by defendants Mortgage Guaranty Insurance Corporation ("MGIC") and Radian Guaranty Inc. ("Radian"). The parties have briefed the issues (Docs. 145, 148-52) and the motion is ripe for disposition. For the reasons that follow, the court will deny the motion.

## I. Factual and Procedural History

This putative class action involves captive reinsurance in the residential mortgage insurance industry. Plaintiffs are individual borrowers who entered into residential mortgage loan transactions with defendant M&T. Plaintiffs' various mortgage loans were executed between October 19, 2004, and December 29, 2008.

As a condition of their mortgage, each plaintiff was required to obtain private mortgage insurance. Consistent with custom in the residential mortgage industry, the mortgage insurer was selected by the lender while the individual borrower paid the insurance premium, either through inclusion of premiums in his or her monthly mortgage payment or indirectly through higher interest rates on the loan. Plaintiffs obtained mortgage insurance through M&T and paid monthly premiums ranging from $26.01 to $156.79.

Plaintiffs claim that M&T and its affiliate, M&T Mortgage Reinsurance Co. ("M&T RE") acted with private mortgage insurers Genworth, MGIC, and Radian (collectively, the "primary insurers") to carry out a captive reinsurance scheme in violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq.*, which prohibits referral fees, kickbacks, and unearned fee-splitting in any business incident to real estate settlement services. According to the amended complaint, M&T referred plaintiffs' mortgage transactions to the primary insurers, and the primary insurers issued mortgage insurance policies with respect to each plaintiff's mortgage. In exchange for M&T's referral, the primary insurers then reinsured the policies with M&T's captive reinsurer, M&T RE. Plaintiffs posit that these contracts were "shams" because they did not create a bona fide reinsurance relationship between the primary insurers and M&T RE; according to the amended complaint, no real risk was ever transferred between the primary insurer and M&T RE, and the sole purpose of the agreements was to allow the primary insurers to

2

kick insurance proceeds back to M&T RE in exchange for the mortgage insurance referral.

Plaintiffs commenced this action with the filing of a three-count complaint (Doc. 1) on June 28, 2012. On October 9, 2012, with the consent of all defendants, the plaintiffs filed the now-operative first amended complaint (Doc. 56) which, *inter alia*, added two plaintiffs to the lawsuit.[1] Therein, plaintiffs assert claims for violation of RESPA (Count I), for unjust enrichment (Count II), and for violation of New York General Business Law § 349(a) (Count III). Plaintiffs concede that the plain language of RESPA requires that claims involving unlawful kickbacks and unearned referral fees be brought within one year of "the date of the occurrence of the violation," 12 U.S.C. § 2614, and acknowledge that the most recent of their loans was executed more than three years before this action was commenced. Plaintiffs postulate, however, that the defendants collectively and fraudulently concealed the improprieties of the reinsurance arrangements, preventing them from discovering the RESPA violation within one year of the violation and equitably tolling the statute of limitations.

On December 10, 2012, the M&T defendants and the primary insurers each filed motions (Doc. 66, 69) to dismiss the amended complaint pursuant to Federal

---

[1] The first amended complaint also names United Guaranty Residential Insurance Co. ("United Guaranty") as a defendant. (Doc. 56 at ¶¶ 1, 30). Plaintiffs filed a notice of voluntary dismissal (Doc. 81) on March 13, 2013, dismissing without prejudice all claims against United Guaranty under Federal Rule of Civil Procedure 41(a)(1)(A)(i). Unless otherwise noted, collective references to "defendants" herein exclude former defendant United Guaranty.

3

Rule of Civil Procedure 12(b)(6). Defendants contended—and maintain—that the statute of limitations on each plaintiff's claims has expired and cannot be equitably tolled because plaintiffs did not take any action to investigate their potential claims until years after they accrued. After oral argument, the court took the motions under advisement. On October 30, 2013, the court granted in part and denied in part the defendants' motions, permitting the parties to engage in limited discovery related solely to the issue of equitable tolling. In ruling on the motions, the court followed the course charted by the Honorable Berle Schiller of the United States District Court for the Eastern District of Pennsylvania in a companion case, Riddle v. Bank of Am., 2013 U.S. Dist. LEXIS 52091, *15-18 (E.D. Pa. Apr. 11, 2013). Specifically, as Judge Schiller did, this court observed that while the plaintiffs had sufficiently pled equitable tolling for purposes of Rule 12(b)(6), given the extensive resources likely to be consumed if this matter were to proceed to full merits discovery, the most appropriate course would be to allow the parties to engage in limited discovery as to the statute of limitations and equitable tolling issues alone and thereafter file motions for summary judgment limited to that issue. (Docs. 132-33).

Subsequent to this court's ruling on defendants' motions, the parties in Riddle completed discovery and briefed the equitable tolling issue. On November 18, 2013, Judge Schiller issued a memorandum and order granting summary judgment to the defendants. According to Judge Schiller, discovery had confirmed what the defendants argued: that the plaintiffs had failed to engage in any degree of

4

diligence in discovering the cause of their injuries and that, as such, equitable tolling does not save the plaintiffs' time-barred claims. Riddle, 2013 U.S. Dist. LEXIS 163526, *16-22. On November 22, 2013, the Riddle plaintiffs filed a notice of appeal to the Third Circuit. Now, relying solely on the recent decision in Riddle and contending that the Circuit's resolution of that case will substantially guide this litigation, M&T now moves the court to stay this matter pending a ruling from the Third Circuit.

## II. **Standard of Review**

Inherent in the district court's power to control the disposition of matters appearing on its docket is the power to stay proceedings where judicial economy or other interests so require. Landis v. N. American Co., 299 U.S. 248, 254 (1936). In order to exercise this discretion, district courts are directed to "weigh competing interests and maintain an even balance." Id. The court must consider four factors in determining whether a stay is appropriate: (1) the length of the requested stay, (2) the hardship that the moving party would face if the stay was not granted, (3) the injury the stay would inflict on the non-moving party, and (4) whether granting a stay would streamline the proceedings by simplifying the issues or promoting judicial economy. Id. at 254-55. A court may, upon balancing these factors, "hold one lawsuit in abeyance to abide the outcome of another which may substantially affect it or be dispositive of the issues." Bechtel Corp. v. Local 215, Laborers' Int'l Union, 544 F.2d 1207, 1214 (3d Cir. 1976).

5

**III. Discussion**

In its motion, M&T contends that the issues *sub judice* are factually and legally identical to the issues pending before the Third Circuit in Riddle and that judicial economy compels a stay of this action because the appellate court's resolution of Riddle will directly impact the course of this matter. (Doc. 145 at 3-4 (asserting that "the Third Circuit's decision would . . . control or significantly inform any decision by [this court] on the equitable tolling issue")). M&T predicts that discovery in this matter will reveal facts identical to those in Riddle and ultimately result in dismissal of the plaintiffs' claims. (Id. at 4-6).

In opposing the motion, plaintiffs assert that Judge Schiller's decision was based on an underdeveloped record as a result of discovery limitations imposed by the court subsequent to issuing its Rule 12(b)(6) decision. Specifically, plaintiffs note that Judge Schiller, in shaping the discovery in Riddle, narrowed its scope significantly, permitting the parties to engage in discovery only to the extent their efforts related to the plaintiffs' knowledge and conduct following the execution of their loan documents but barring any discovery related to whether the defendants actively misled them. (Doc. 148 at 6-12). Similarly, MGIC and Radian argue that M&T's argument is purely speculative, observing that multiple courts have denied requests to stay litigation absent some indication that a pending appeal would result in a "seismic shift" in controlling law. (See Doc. 150 at 3 (quoting Weitzner v. Sanofi Pasteur, Inc., 2012 U.S. Dist. LEXIS 67016, *25 (M.D. Pa. May 14, 2012)). In addition to their concerns with judicial economy, MGIC and Radian also assert that

6

the balance of the Landis factors weigh against granting the requested stay because of its unlimited duration and the resulting undue delay of this litigation. (Id. at 5-7).[2]

The court agrees with plaintiffs, MGIC, and Radian. The entirety of M&T's argument is premised on the court today concluding that discovery must be limited solely to the issue of whether plaintiffs engaged in due diligence following execution of their mortgages. The court is unpersuaded that discovery should be so restricted. Indeed, the court is cognizant and has previously recognized that the equitable tolling doctrine is two-pronged, inquiring into both plaintiffs' *and* defendants' conduct, see Cetel v. Kirwan Fin. Grp., Inc., 460 F.3d 494, 509 (3d Cir. 2006) (court must consider whether "the defendant actively misled the plaintiff" and ask if "the plaintiff's ignorance is not attributable to her lack of reasonable diligence in attempting to uncover the relevant facts"), and that the two elements in complex cases such as this may often become entangled. For that reason, the court does not impose such a narrow limitation on equitable tolling discovery.

M&T's contention that the record to be developed before this court will be identical to the record in Riddle is thus entirely premature. M&T does not, and cannot, guarantee such a result. Indeed, its prediction is purely speculative: there

---

[2] Relatedly, Radian argues that pending discovery requests are likely to lead to its imminent dismissal from this lawsuit if it is discovered that neither M&T nor M&T RE provided reinsurance to Radian. In its reply brief, M&T concedes that the only loan insured by Radian, executed by plaintiff Amanda Bishi, was *not* reinsured through M&T or its subsidiary, M&T RE. To the extent that plaintiffs concur with these facts, the court encourages the parties to stipulate with dispatch to the dismissal of defendant Radian.

7

can be no certainty, at this juncture, that plaintiffs' claims *sub judice* are factually indistinguishable from those dismissed by Judge Schiller. Finding no basis under Landis to grant M&T's request, the court concludes that to impose a stay would unduly delay the progress of this litigation and hinder rather than preserve the interests of judicial economy.

**IV.    Conclusion**

For the reasons stated herein, the court will deny M&T's motion (Doc. 144) to stay this litigation and order the parties to continue to engage in limited discovery consistent with this opinion and prior orders of the court. To the extent the parties remain embroiled in specific discovery disputes, the court will refer those matters to a United States Magistrate Judge for resolution.  An appropriate order follows.

    /S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:        January 14, 2014