IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JUDITH CUNNINGHAM**, *et al.*, | : | CIVIL ACTION NO. 1:12-CV-1238 |
| | : | |
| Plaintiffs | : | (Chief Judge Conner) |
| | : | |
| v. | : | |
| | : | |
| **M&T BANK CORP.**, *et al.*, | : | |
| | : | |
| Defendants | : | |

**MEMORANDUM**

Presently before the court in this putative class action under the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq.*, is a motion (Doc. 197) for summary judgment pursuant to Federal Rule of Civil Procedure 56(a) filed by defendants M&T Bank, M&T Bank Corp., and M&T Mortgage Reinsurance Co., Inc. (collectively, "M&T"). M&T's motion follows a period of court-ordered discovery narrowly tailored to the issue of equitable tolling. The motion is fully briefed and ripe for review.

**I.     Factual Background**[1]

Between May 2007 and June 2008, Judith Cunningham ("Cunningham"), Frederick D. Deimler, III ("Deimler"), and Carol Vanover ("Vanover") obtained residential mortgage loans from M&T Bank Corp. ("M&T Bank") to finance the purchase of their respective homes. (Doc. 199 ¶ 1; Doc. 209 ¶ 1). As a condition of

---

[1] To the extent facts are undisputed or supported by uncontroverted record evidence, the court cites directly to the parties' statements of material facts.

their mortgage, each plaintiff was required to purchase private mortgage insurance in connection with their loan. (See Doc. 199 ¶ 2; Doc. 209 ¶ 2; also Doc. 56 ¶¶ 21-23). Consistent with custom in the residential mortgage industry, the private mortgage insurers[2] were selected by M&T. (See Doc. 56 ¶ 48). M&T is the beneficiary of the mortgage insurance agreements; the borrower pays the insurance premium, either directly through inclusion of premiums in his or her monthly mortgage payment or indirectly through higher interest rates on the loan. (See id. at ¶ 47).

Plaintiffs contend that M&T and its affiliate, M&T Mortgage Reinsurance Co., Inc., ("M&T RE"), colluded with the mortgage insurers to carry out a captive reinsurance scheme in violation of RESPA's prohibition against referral fees, kickbacks, and unearned fee-splitting in business incident to real estate settlement services. See 12 U.S.C. § 2607(a). Specifically, plaintiffs assert that M&T referred their loans to the primary insurers, who in turn reinsured the primary insurance policies with M&T's captive reinsurer, M&T RE. (See Doc. 56 ¶¶ 21-23, 69-71). These contracts required the primary insurers to cede a portion of plaintiffs' insurance premiums to M&T RE despite the fact that, according to plaintiffs, no risk was transferred between the primary insurers and M&T RE.[3]

---

[2] The primary mortgage insurers included defendants Genworth Mortgage Insurance Corp. ("Genworth"), Mortgage Guaranty Insurance Corp. ("MGIC"), United Guaranty Residential Insurance Corp. ("United Guaranty"), and Radian Guaranty, Inc. ("Radian"). (Doc. 56 ¶¶ 30-33). Plaintiffs have dismissed each of the mortgage insurer defendants. (See Docs. 86, 160, 240).

[3] The instant memorandum does not address the substantive merits of plaintiffs' RESPA claims but rather the timeliness thereof. Therefore, the court need not engage in a detailed factual discussion of the reinsurance arrangement.

Each plaintiff was advised at closing of both the need for primary mortgage insurance and the potential that their mortgage insurance would become part of M&T's captive reinsurance arrangement. (See Doc. 199 ¶ 11; Doc. 209 ¶ 11). Cunningham testified that she understood at closing that "there could be captive reinsurance provided on her loan," meaning that M&T Bank "might have a reinsurer that could reinsure [her] mortgage insurance." (Doc. 209 ¶ 14). Deimler similarly noted this understanding, testifying that he knew "there could be captive reinsurance provided" by M&T and that his mortgage "could be part of a captive reinsurance agreement." (Id.) Vanover likewise agreed that she was "aware of captive reinsurance, and that there might be captive reinsurance on [her] loan" at the time of closing. (See Vanover Dep. 58:7-10, Jan. 30, 2014, ECF No. 92-2 at 23). Each plaintiff signed a private mortgage insurance disclosure which informed them that M&T Bank "may directly or through an affiliated company (a 'Reinsurance Company'), enter into a reinsurance agreement with the private insurance company that will be providing the mortgage insurance covering your loan." (Doc. 199 ¶¶ 21-22; Doc. 209 ¶¶ 21-22; see also Doc. 199-11 (Cunningham disclosure); Doc. 199-12 (Deimler disclosure); Doc. 199-13 (Vanover disclosure)).

Plaintiffs were cognizant of their right to opt out of the captive reinsurance program, but none elected to do so. (See Doc. 199 ¶¶ 26-30; Doc. 209 ¶¶ 26-30; see also Docs. 199-11, 199-12, 199-13). Nor did any plaintiff recall asking questions about the reinsurance arrangement at or prior to closing. (See Doc. 199 ¶ 12; Doc. 209 ¶¶12; see also Vanover Dep. 39:9-17, ECF No. 199-2 at 11 ("I don't remember asking any questions."); Cunningham Dep. 79:19-24, 86:10-22, Mar. 11, 2014, ECF

No. 199-3 at 13, 16 (testifying that she does not recall "having any questions . . . [or] any discussions about this [mortgage insurance disclosure] document at any time"); Deimler Dep. 94:11-95:5, 95:21-96:11, Mar. 18, 2014, ECF No. 199-4 at 15-17 (stating that he had questions with respect to the distinction between homeowners and mortgage insurance, but no questions with respect to the captive reinsurance arrangement).

Finally, plaintiffs concede that they did not investigate whether their loans had been reinsured or look into the arrangement with M&T RE until they were solicited by current counsel. (See Doc. 199 ¶ 32; Doc. 209 ¶ 32 (noting that plaintiffs "did not discover the possibility that the mortgage documents were misleading until after they received the Notice from counsel")). Cunningham testified that she did not become aware of or look into the existence of her claims until September of 2011 when she received a notice from her current counsel. (See Doc. 210 ¶ 33). Similarly, Deimler did not learn of his potential lawsuit until "late 2011 or early 2012," and Vanover "did not discover the basis of her claims until April 2012 when 'the lawyers explained it, this whole lawsuit, to me.'" (Id. ¶¶ 35-36).

## II. Procedural History

Plaintiffs commenced this action with the filing of a three-count complaint (Doc. 1) on June 28, 2012. On October 9, 2012, with the consent of all defendants, plaintiffs filed the now-operative first amended complaint. (Doc. 56). Therein, plaintiffs assert claims for violation of RESPA (Count I) and unjust enrichment

(Count II).⁴  Defendants moved to dismiss plaintiffs' claims, primarily contending that the statute of limitations has expired and cannot be equitably tolled.  (See Docs. 66, 67, 69).  The court held oral argument on October 17, 2013, and, at the conclusion thereof, took the motions to dismiss under advisement.

On October 30, 2013, the court issued a memorandum and order (Docs. 132-33) denying defendants' motions and allowing plaintiffs to engage in a period of discovery narrowly tailored to the equitable tolling inquiry.  The court underscored the fact-intensive nature of tolling determinations, following the course charted by the Honorable Judge Berle M. Schiller of the Eastern District of Pennsylvania, also at the Rule 12 stage, in Riddle v. Bank of America Corp., No. 12-1740, 2013 WL 1482668, at *7 (E.D. Pa. Apr. 11, 2013) (herein "Riddle I").  The court noted that plaintiffs' allegations "*might* support equitable tolling of their respective statutes of limitations," but hesitated to allow the claims to proceed to full merits discovery, "consuming both the parties' and the court's time and resources, given defendants' articulated and legitimate concerns about the timeliness of plaintiffs' claims."  Cunningham I, 2013 WL 5876337, at *10 (emphasis added).

---

⁴ The amended complaint asserted a claim for violation of New York General Business Law § 349(a) at Count III.  (See Doc. 56).  The court dismissed the New York law claim as to all plaintiffs except Amanda Bishi ("Bishi"), as hers was the only claim arising from a mortgage loan transaction that occurred in New York state.  See Cunningham v. M&T Bank Corp., No. 12-cv-1238, 2013 WL 5876337, at *3 (M.D. Pa. Oct. 30, 2013) (herein "Cunningham I") (collecting cases).  Bishi later stipulated to voluntary dismissal of her claims (see Doc. 160); hence, the New York state law claim is no longer before the court.

Following a period of discovery, M&T moved for summary judgment on June 26, 2014.[5] The motion has been fully briefed, and the parties have filed several notices of supplemental authority. (See Docs. 197, 208, 215, 218, 223, 226, 227, 228, 233, 235, 237). M&T's motion is thus ripe for disposition.

## III. Standard of Review

### A. Summary Judgment

Through summary adjudication the court may dispose of those claims that do not present a "genuine issue as to any material fact" and for which a jury trial would be an empty and unnecessary formality. See FED. R. CIV. P. 56(a). The burden of proof is upon the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); FED. R. CIV. P. 56(e); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986); see also FED. R. CIV. P. 56(a), (e). Only once this threshold is met may the cause of action proceed. See Pappas, 331 F. Supp. 2d at 315.

---

[5] Primary mortgage insurers MGIC and Genworth separately moved for summary judgment on June 4, 2014, and June 26, 2014, respectively. (See Docs. 192, 200). Plaintiffs voluntarily dismissed their claims against MGIC and Genworth on January 30, 2015. (See Doc. 240).

**B.     RESPA Statute of Limitations and Equitable Tolling**

Plaintiffs' RESPA claims are subject to a one-year statute of limitations. See 12 U.S.C. § 2614. The limitations period runs "from the date of the occurrence of the violation," id., which commences immediately upon closing of the loan. See Marple v. Countrywide Fin. Corp., No. 07-4402, 2008 WL 9418768, at *2 (D.N.J. May 7, 2008) (citing Smith v. EquiCredit Corp., 2002 WL 32349873, at *3 (E.D. Pa. Oct. 4, 2002)). Plaintiffs concede that they commenced this action well after the one-year limitations period expired, but nonetheless assert that the doctrine of equitable tolling revives their otherwise stale claims. As the court observed in Cunningham I, equitable tolling is applicable to RESPA claims and operates to stop the running of the limitations period regardless of whether the claim accrual date has passed. See Cunningham I, 2013 WL 5876337, at *3 (collecting cases).

Equitable tolling is an "extraordinary remedy." Santos *ex rel.* Beato v. United States, 559 F.3d 189, 197 (3d Cir. 2009). The Third Circuit Court of Appeals has sanctioned its application in only three circumstances: (1) when a defendant has actively misled a plaintiff regarding his claim; (2) when a plaintiff has "in some extraordinary way" been prevented from pursuing his rights; or (3) when a plaintiff has timely asserted his rights in the wrong forum. See Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1398 (3d Cir. 1994); see also Hedges v. United States, 404 F.3d 744, 751 (3d Cir. 2005). Plaintiffs proceed on only the first ground, contending that M&T fraudulently concealed the true nature of its reinsurance relationships, "actively misleading" plaintiffs in such a way that they "could not,

despite the exercise of due diligence, have discovered the underlying basis for their claims." (Doc. 56 ¶ 153).

To succeed on a fraudulent concealment theory, plaintiffs must prove the following three elements: (1) that defendants "actively misled" plaintiffs; (2) that defendants' misrepresentations prevented plaintiffs "from recognizing the validity of [their] claims within the limitations period"; and (3) that plaintiffs' ignorance of their claims is not the result of a "lack of reasonable due diligence to uncover the relevant facts." Cetel v. Kerwan Fin. Group, Inc., 460 F.3d 494, 509 (3d Cir. 2006). Absent proof supporting each of these factual findings, the statute of limitations cannot be equitably tolled and defendants are entitled to summary judgment. See id. Mere non-disclosure is not a misleading act for purposes of tolling the RESPA statute of limitations; rather, a plaintiff must plead "an independent act of concealment" upon which he or she justifiably relied. See Cunningham I, 2013 WL 5876337, at *4 (quoting Riddle I, 2013 WL 1482668, at *7; Garczynski v. Countrywide Home Loans, Inc., 656 F. Supp. 2d 505, 516-17 (E.D. Pa. 2009)); see also Marple, 2008 WL 9418768, at *8 (quoting Heintz Corp. v. Electro Methods, Inc., No. 94-6916, 1995 WL 405721, at *5 (E.D. Pa. June 20, 1995)).

**IV.   Discussion**

M&T raises three principal arguments in support of its Rule 56 motion. First, M&T contends that the purported misrepresentations in its mortgage loan documents did not "actively mislead" plaintiffs. Second, M&T asserts that neither the bank nor its affiliates took any action to prevent plaintiffs from timely asserting a claim. Third, and most emphatically, M&T argues that plaintiffs failed to exercise

8

any diligence whatsoever during the relevant time period. (See Doc. 198). In other words, M&T argues that plaintiffs' evidence fails to satisfy *any* of the Cetel factors, much less all three as required to trigger equitable tolling. Relying primarily on arguments raised and accepted by the court at the pleading stage, plaintiffs vigorously oppose M&T's motion.

This court's analysis is guided by Judge Schiller's cogent rationale in Riddle v. Bank of America Corp., No. 12-1740, 2013 WL 606163 (E.D. Pa. Nov. 18, 2013) (herein, "Riddle II"). At the Rule 12(b)(6) stage, the undersigned adopted the approach taken by Judge Schiller in Riddle I, exercising caution and allowing plaintiffs to engage in a period of discovery despite certain reservations as to the propriety of equitable tolling. During this period of discovery, the Riddle defendants filed summary judgment motions raising arguments—and establishing a factual predicate—identical to that *sub judice*. In Riddle II, defendants argued that plaintiffs' failure to exercise *any* diligence during the limitations period precludes application of equitable tolling to revive their claims. Defendants also maintained that none "actively misled" the plaintiffs and that no act of theirs prevented plaintiffs from earlier discovery of their claims. The Riddle II court agreed with defendants on both points.

Despite giving the Riddle plaintiffs "ample opportunity to make their case for equitable tolling," Judge Schiller concluded that the record proves only a negative: that plaintiffs took *no* action from the date of their respective closings—the date their claims accrued—until they were solicited by lawyers more than seven years later. See Riddle II, 2013 WL 6061363, at *5-6. Judge Schiller rejected the plaintiffs'

contention that the RESPA violation is, by its nature, a self-concealing wrong, so complex that it prevented plaintiffs from suspecting wrongdoing. See id. at *7 (rejecting plaintiffs' argument that "prior to lawyerly intervention, they had no reason to suspect that they were victims"). Judge Schiller observed that to place his imprimatur on plaintiffs' theory would "render[] the statute of limitations a nullity," indefinitely extending the time in which RESPA plaintiffs might "resuscitate stale claims." Id. Judge Schiller acknowledged that at the Rule 12 stage, the court held that participation in one's closing is sufficient to satisfy Cetel's diligence prong; he noted, however, that the Rule 12 holding was grounded in the assumption that each of plaintiffs' allegations was true and merely allowed them to test those allegations in discovery. See id. at *6. The summary judgment record, however, proved that plaintiffs did nothing "other than appear at their closings" and never asked questions or investigated their potential claims, falling well short of the diligence demanded by Cetel. See id. Judge Schiller observed that the plaintiffs "can point to [no] action" taken by either the bank or the primary insurers after the plaintiffs' closing to satisfy the active misrepresentation prong. See id. at *8-9. For all of these reasons, Judge Schiller concluded that plaintiffs' RESPA claims were fatally time barred.

The Riddle II plaintiffs appealed, and on October 15, 2014, a three-judge panel of the Third Circuit Court of Appeals affirmed Judge Schiller's decision in a

non-precedential opinion.[6]  Writing for the panel and reciting facts identical to those before this court, Judge Chagares held that the record "clearly indicate[s] that the plaintiffs did not exercise diligence sufficient to equitably toll the statute of limitations."  Riddle v. Bank of America Corp., ___ F. App'x ___, No. 13-4543, 2014 WL 5152003, at *2 (3d Cir. 2014) (non-precedential).  The panel emphasized that, although plaintiffs were informed of the potential captive reinsurance arrangement and were provided an opportunity to opt out at their respective closings, they "took no subsequent action to determine whether any such reinsurance arrangement was legitimate."  Id.  The panel flatly rejected the futility defense that plaintiffs raise here, citing Cetel for the proposition "that . . . asking defendants whether plans were legal [and presumably receiving an affirmative response] is inadequate to show reasonable diligence."  Id. (quoting Cetel, 460 F.3d at 508).  Judge Chagares iterated the panel's holding in no uncertain terms, concluding that "[t]aking the defendants' representations at face value without asking a single question for seven

---

[6] The court acknowledges that the Third Circuit's decision in Riddle is not precedential.  See, e.g., In re Grand Jury Investigation, 445 F.3d 266, 276 (3d Cir. 2006) ("NPOs 'are not regarded as precedents that bind the court . . . a fortiori, they are not precedents for the district courts of this circuit."); see also 3d Cir. INTERNAL OPERATING PROCEDURES 5.3 ("An opinion . . . that appears to have value only to the trial court or the parties is designated as not precedential . . . .").  Nonetheless, the court is persuaded by the panel's *ratio decidendi* and the policy considerations underlying the same.

11

years is insufficient diligence to toll the statute of limitations in these circumstances." Id.[7]

Defendants urge the court to adopt the logic of both Judge Schiller and the Third Circuit panel in this case. On the issue of diligence, the factual record before the court is indistinguishable from the record in Riddle: plaintiffs concede that they did not act to investigate their claims until they were contacted by counsel long after the statute of limitations had expired. (E.g., Doc. 209 ¶ 43 ("Plaintiffs do not dispute that Ms. Cunningham did not attempt to investigate or discover her claims other than on May 31, 2007 when she signed the documents at her loan closing and on May 9, 2012 after she was contacted by counsel."); ¶ 44 ("Plaintiffs do not dispute that Mr. Deimler did not attempt to investigate the facts underlying his claims prior to receiving the Notice from counsel."); ¶ 42 (same, for Vanover)). Indeed, plaintiffs concede "that they did not ask any questions concerning reinsurance at their closings" and "did not investigate or ask any questions concerning whether to opt out of the [captive reinsurance agreement." (Id. ¶ 45). Nonetheless, plaintiffs urge the court to adopt the futility exception rejected in Riddle and hold that equitable

---

[7] In *dicta*, the panel also noted its opinion that "there is scant evidence that any . . . defendant 'actively misled' the plaintiffs." Riddle III, 2014 WL 5152003, at *2 n.4. Ostensibly, the panel agreed with Judge Schiller, who concluded that plaintiffs' *probata* with respect to the "actively misled" prong fell well short of matching the complaint's *allegata*. See Riddle II, 2013 WL 6061363, at *8-9 (holding that plaintiffs could not "point to any action taken by any Defendant following Plaintiffs' closing that suggests Defendant actively misled Plaintiffs about the facts underlying their claims"). Because this court's finding of a lack of diligence is—under prevailing Third Circuit law—fatal to plaintiff's claims, the court need not address the issue of whether the mortgage documents "actively misled" plaintiffs.

tolling applies notwithstanding a total dearth of diligence when a transaction or scheme is particularly complex.

Judge Schiller's decision in Riddle, affirmed by the Circuit panel on appeal, is consistent with prevailing law and logic. Equitable tolling is an "extraordinary remedy," sparingly granted and wholly inapplicable in the absence of a showing that plaintiffs exercised *some* degree of diligence during the limitations period. Riddle, 2014 WL 5152003, at *2 (citing Cetel, 460 F.3d at 508). In other words, "a plaintiff *will not* receive the benefit of equitable tolling unless she exercised due diligence in pursuing and preserving her claim." Santos, 559 F.3d at 197 (emphasis added); also Mathews v. Kidder, Peabody & Co., 260 F.3d 239, 256 n.25 (3d. Cir. 2001) (rejecting position that plaintiffs "need not demonstrate due diligence to survive summary judgment" as "squarely foreclosed" by Third Circuit case law) (citing Forbes v. Eagleson, 228 F.3d 471, 487 (3d Cir. 2000)). Plaintiffs *sub judice* exercised no diligence whatsoever in connection with their claim until contacted by attorneys in May of 2012, more than seven years after the most recent of their claims otherwise expired. (Doc. 209 ¶¶ 42-44). Each plaintiff was notified of the reinsurance arrangement at their respective closings, yet none questioned or investigated its propriety. (See id. ¶ 45). Instead, plaintiffs relied solely and docilely upon M&T's assertion that its arrangement was legitimate until solicited by counsel more than half a decade after the limitations period expired. Moreover, despite an almost singular reliance on their novel futility theory, plaintiffs direct the court to no evidence tending to establish that any investigative efforts necessarily would

have proven fruitless. Accordingly, the law of the Circuit "squarely forecloses" plaintiffs' claim.

The court agrees with Judge Schiller that to adopt plaintiffs' futility theory would effectively write the statute of limitations out of RESPA. See Riddle II, 2013 WL 6061363, at *7. Plaintiffs urge the court to adopt a rule which would toll the statute of limitations in cases involving obscure or complicated legal issues until an attorney notifies a plaintiff that his or her rights may have been violated. Cf. id. ("Under Plaintiffs' theory, when would the statute of limitations run? One year after Plaintiffs received their first solicitation letter? One year after Plaintiffs first met with lawyers to discuss their claims?"); but see White v. PNC Fin. Servs. Grp., Inc., No. 11-7928, 2014 WL 4063344, at *6 (E.D. Pa. Aug. 18, 2014) (prior to Circuit's ruling in Riddle, accepting plaintiff's arguments at Rule 12(b)(6) stage that any attempt at diligence would have been futile). Not only does plaintiffs' proposition run counter to the Third Circuit's express mandate that *some* diligence is mandatory to receive the extraordinary benefit of equitable tolling, see Santos, 559 F.3d at 197, it would likewise run afoul of the rule that mistake as to, or ignorance of, the applicable law "does not entitle [plaintiffs] to equitable tolling." Id. at 207; see Sch. Dist. of City of Allentown v. Marshall, 657 F.2d 16, 21 (3d Cir. 1981) ("[Plaintiff's] ignorance of the law is not enough to invoke equitable tolling.") (citing Quina v. Owens-Corning Fiberglas Corp., 575 F.2d 1115, 1118 (5th Cir. 1978)). It would allow a limitations period to run indefinitely, without regard for congressionally established claims-accrual dates or statutes of limitation. See Riddle II, 2013 WL 6061363, at *7 ("Plaintiffs' theory would provide them with unlimited time to resuscitate stale

14

claims and would leave the Court with no way to determine when the clock begins to run on their claims."); Hill v. Flagstar Bank, No. 12-2770, 2014 WL 2892397, at *7 (E.D. Pa. June 26, 2014) ("Plaintiffs . . . have been unable to explain to the Court how their position does not read the statute of limitations right out of RESPA."); see also Turner v. Bank of America, N.A., No. 2:12-cv-1319, 2013 WL 321663 (D. Nev. Jan. 25, 2013) (in Truth in Lending Act case, concluding that "to toll the statute of limitations for all unsophisticated borrowers until they seek the advice of counsel[] would both eviscerate the statute of limitations and deter rather than promote the requisite due diligence").  Plaintiffs offer no response to defendants' viable concern that adopting plaintiffs' theory writes the one-year statute of limitations directly out of RESPA.[8]

---

[8] Plaintiffs contend that they were not on "inquiry notice" of their claims until they were contacted by counsel in May of 2012 and cite various Third Circuit decisions as support for their position that this late notice, standing alone, saves their claims.  The court rejects this contention.  It conflates the concept of equitable tolling, which governs the tolling of an already-triggered statute of limitations, with the discovery rule doctrine, which applies to toll the *accrual* of a claim for purposes of triggering the limitations period.  See, e.g., Forbes, 228 F.3d at 486 ("The purpose of the discovery rule is to determine the accrual date of a claim, for ultimate purposes of determining, as a legal matter, when the statute of limitations begins to run.  Equitable tolling . . . presumes claim accrual.  Equitable tolling steps in to toll, or stop, the running of the statute of limitations in light of established equitable considerations.") (quoting Oshiver, 38 F.3d at 1390).  As the Forbes court observed, discovery rule inquiries focus on when the plaintiff uncovered the existence of an injury; equitable tolling analyses query when the plaintiff became aware of the facts underlying their claim.  See id.  This distinction is crucial here, when plaintiffs seek not to toll the claims accrual date based on a late discovery of a latent injury but rather to toll the already-running limitations period based on defendants' purported misrepresentations.  Plaintiffs possessed all facts necessary to further investigate the captive reinsurance scheme, or to opt out of the same, at the time of closing.

15

Contrary to plaintiffs' contention, granting summary judgment on the basis of a lack of diligence is entirely consistent with the court's Rule 12(b)(6) determination. (See Doc. 208 at 37, 47-48). The court exercised abundant caution at that stage of the litigation, permitting plaintiffs to develop a factual record on the issue of equitable tolling. See Cunningham I, 2013 WL 5876336, at *6 (noting plaintiffs' lone allegation that they "fully participated in" their respective loan closings and holding that "nothing more is required of RESPA plaintiffs *at the pleadings stage*" (emphasis added)). The court cautioned, however, that its "ruling is a decision on neither the merits nor the timeliness of this lawsuit," but a liberal construction of the facts as pled "*might* support equitable tolling" if supported by a fully developed record. See id. at *10 (emphasis added). For all of the reasons discussed *supra*, it is now clear that the Rule 56 record and controlling law foreclose plaintiffs' claim.

The court is not unsympathetic to the concerns voiced by plaintiffs. A reasonable borrower, already overwhelmed by the complexities of the home-buying process, may be disinclined to question the propriety of various behind-the-scenes transactions. That a typical purchaser may not learn of potential RESPA violations until advised of same by counsel is not unexpected. See Cunningham I, 2013 WL 5876337, at *6 n.4; White, 2014 WL 4063344, at *5 ("To ask [borrowers] to second-guess the information that has been provided them by those with more expertise in these sorts of dealings . . . is unreasonable and unrealistic."); see also Hill, 2014 WL 2892397, at *6 (recognizing that "this is a harsh result" but also observing that plaintiffs' theory would effectively rewrite an "open-ended" limitations period into the statute). Unfortunately, RESPA simply does not contemplate an inquiry notice

or discovery rule element which permits equitable tolling of the limitations period. Plaintiffs conducted no investigation into their claims for more than half a decade after the limitations period expired. As a consequence, summary judgment in favor of defendants is warranted.[9]

## V.     Conclusion

For all of the reasons stated herein, the court will grant M&T's motion (Doc. 197) for summary judgment.[10]  An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated:          February 10, 2015

---

[9] Plaintiffs similarly rely on equitable tolling to revive their otherwise time-barred claims for unjust enrichment. (See Doc. 132 at 15 n.5 (rejecting defendants' expiration argument with respect to the unjust enrichment claim pending equitable tolling discovery; see also Doc. 2-9 at 49 (agreeing that defendants' argument with respect to the unjust enrichment claim is "entirely dependent upon their tolling arguments directed at the RESPA claims")).  The court's *ratio decidendi* applies with equal force to foreclose these claims.  Accordingly, summary judgment is likewise appropriate with respect to each plaintiffs' unjust enrichment claim.

[10] The court will deny as moot plaintiffs' request for additional discovery pursuant to Rule 56(d).  See FED. R. CIV. P. 56(d) ("If a nonmovant shows by affidavit or declaration that . . . it cannot present facts essential to justify its opposition, the court may . . . (2) allow time to obtain affidavits or declarations or to take discovery . . . .").  Plaintiffs request pertains exclusively to the mortgage insurer defendants, (see Doc. 208 at 26-27 (requesting "vital pieces of evidence bearing upon MIs' direct involvement with affirmative misrepresentations made to Plaintiffs")), each of which has been dismissed by settlement or otherwise as of the date of this memorandum.  (See Docs. 86, 160, 240).